I3DALEY, Judge.
Appellants, Gail Lobue, Simco Industries, Inc., Rodeo Worldwide Inc. and State Farm Mutual Insurance Company appeal the trial court’s grant of summary judgment in favor of American Summit Insurance Company (formerly known as Summit Home Insurance Company, hereinafter referred to as Summit), finding that Summit did not furnish insurance coverage to appellant Simco. We affirm.
Plaintiff Gail Lobue was involved in an automobile accident on August 16, 1989 with an 18-wheeler driven by James Dickerson and owned by Simco Industries, Inc. (Simco). Plaintiff originally filed a Petition for Damages against Simco, Summit, and Dickerson for her injuries allegedly sustained in this accident. Summit was sued as the insurer of Simco.
Simco answered the suit, denying liability. Simco filed a cross claim against Summit for coverage and a defense. Additionally, Simco filed a third party demand against American E.S.I. Crump Agency, Inc. and Rodeo Worldwide Inc. (Rodeo), |4aIIeging that those two companies were responsible for securing the insurance coverage that was supposedly provided by Summit. Summit’s answer denies it ever insured or provided insurance coverage to Simco.
Summit filed a Motion for Summary Judgment on the matter of insurance coverage, which was denied. Thereafter, this litigation was bifurcated and a trial was held on November 6, 1995, on the issue of insurance coverage alone. The trial court issued a Judgment and Reasons on March 19, 1996, finding that Summit did not authorize, expressly or apparently, anyone to bind Summit for any trucker’s liability coverage. On May 3, 1996, the court issued a judgment dismissing all claims against Summit. All four appellants joined in a Motion for Devol-utive Appeal and a Designation of the Record. The assignment of error on appeal is that the trial court erred in not finding that Summit expressly or impliedly authorized the writing and binding of trucker’s liability insurance coverage to Simco.
The issue is whether Summit granted authority, either actual, implied, or apparent, to outside agents to issue binders of valid insurance coverage with Summit in favor of Simco.
So as to understand the complexities of the issue, the following represents the list of persons and/or entities involved:
1. Simco Industries, Inc., a Louisiana corporation, engaged in long-haul trucking.
*107 2. American ESI “Crump” Agency and/or Betty Crump, an insurance agen-ey/agent located in LaPlace, Louisiana, to whom representatives of Simco went to obtain insurance coverage.
3. Rodeo Worldwide, Inc., a Louisiana Corporation, with its principle place of business located in New Orleans, Louisiana. Rodeo was a broker. Crump contacted Rodeo, who had access to broader markets.
4. The Houston Corporation, a London brokerage house whose general manager was Anthony Houston. Rodeo contacted Houston Corp. to obtain coverage for Simco.
|55. Magill Agency and/or William Fowler (Magill), an insurance brokerage house whose principal place of business is Chicago, Illinois. Houston worked with Magill to place Simco’s coverage.
6. Bramston, Limited, a London insurance brokerage house. Bramston allegedly held line slip/eover note regarding binding authority for Summit from Consortium ’89.
7. Capita] General Corporation (CGC), based in California, whose president is Steve Goodman. CGC negotiated to purchase Summit and/or its parent, SHIC Holding Co. Inc. The Minnesota Department of Insurance denied approval of the purchase around September 1989 and the sale never occurred.
8. Consortium ’89 and its head, Colin Yo-uell. Youell met Thomas O’Connell, president of Summit, in 1989 and facilitated meetings between representatives of CGC and Summit regarding the ostensible purchase of Summit by Capital General.
9. Summit Home Insurance Company, an insurance company licensed in the State of Minnesota, whose president was Thomas O’Connell. Testimony showed that their principal business was mobile home homeowners’ insurance in Florida. Summit had never written long haul truckers’ liability coverage.
At the trial, the parties stipulated that the following witnesses’ testimonies would be presented by deposition: Thomas O’Connell (former President of Summit), William Little (Summit), William Fowler (Magill Agency), Anthony Houston (Houston Corporation), and Michael Rodrigue (Rodeo). Live testimony was heard from B.J. Crump (American ESI “Crump” Agency), James L. Murphy (present secretary of Summit), and Rex Smith (attorney for O’Connell and Summit).
Appellants argue that Summit granted either express or implied authority for various parties to issue coverage binders with Summit. The fundamental question is the existence of implied or actual authority.

Facts

On or about June 19, 1989, Simco contacted American ESI “Crump” Agency to secure insurance coverage for its long haul trucking operations. B.J. Crump in turn contacted Rodeo Worldwide, an insurance broker, to secure coverage for Simco. |6Rodco then contacted Houston Corporation requesting a premium quote. As part of this process, Simco’s application was faxed by Rodeo to Houston. On June 20, 1989, Houston faxed to the Magill Agency (owner, William Fowler) Simco’s application and requested a quote. Magill forwarded the application to Bramston Limited, a London insurance brokerage house, who allegedly held via Consortium ’89 and Colin Youell the line slip/cover note (binding authority) for Summit.
On June 30, 1989, Houston, via fax to Rodeo, quoted for the Simco risk and requested the amount of Simco’s current premium. Rodeo requested financing of the premium, which Houston approved on July 3, 1989. On July 13, 1989, Rodeo wrote to Houston requesting they bind coverage effective July 24, 1989 for a policy period of one year. On July 14, 1989, Houston faxed to Magill acceptance of the premium quotation. After deducting its commission, Rodeo forwarded the net premium to Houston. Houston then forwarded the premium to Magill. Summit never received the premium. Coverage was confirmed in writing to Houston by Magill, and Houston confirmed coverage to Rodeo. Rodeo then issued confirmation for a binder to Crump, who then provided the binder to Simco. Between July and Au *108 gust, Crump and Rodeo received notice from Rex Smith, an attorney for Summit, that the coverage with Summit was invalid and that they needed to procure different insurance coverage.
Predating the above scenario, in the spring and early summer of 1989, Thomas O’Connell of Summit was engaged in negotiations to sell Summit to Capital General Corporation, owned by Steve Goodman. The two men had been brought together by Colin Youell of Consortium ’89, a London based group that, while not insurance agents, had extensive dealings with insurance companies. William Little’s deposition indicated that O’Connell and Youell met around four months prior to the initiation |7of negotiations with CGC. A Letter of Intent was issued on April 25,1989. On May 3, 1989, Youell wrote to O’Connell regarding general binding authority during the period of the finalization of the sale. In response to that letter, on May 8, 1989, Summit’s President, Mr. O’Connell, wrote the following letter to Youell:
May 8,1989
Colin Youell
The Consortium of 89 Limited
Sonat House
11/12 Buckingham Gate London SW1E 6LB
Re: General Binding Authority
Dear Colin:
Thank you for your facsimile of May 5, 1989.
Summit Home Insurance Company is unable to grant The Consortium of 89 Limited binding authority of any type at this time.
Also, all transactions that need approval by the Minnesota Insurance Department cannot be circumvented in any way.
Consider the possibility of insuring mentioned risks on a “funds held basis”. This is acceptable to Minnesota and if Steve Goodman is agreeable, it is fíne with me. Please note that all risks must be underwritten by Summit and approved in writing by the company.
Please let me know your thoughts on this immediately.
Very truly yours, x/
Tom O’Connell
Law and Analysis
The Supreme Court has enunciated the test for determining whether an apparent agency relationship exists in Boulos v. Morrison, 503 So.2d 1 (La.1987). The Boulos court explained agency as follows:
Mandate is an act by which one person, a principal, gives power to another, an agent, to transact for him and in his name one or several affairs. LSA-C. art. 2985. An agent’s power or authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct. See Interstate Electric Co. v. Frank Adam Electric Co., 173 La. 103, 136 So. 283 (1931). As between principal and agent the limit of the agent’s authority to bind the principal is governed by the agent’s actual authority. As between the principal and third persons, the limit of an agent’s authority to bind the principal is governed by his apparent authority. Broadway v. All-Star Insurance Corp., 285 So.2d 536 (La.1973); Interstate Electric Co., supra. Apparent authority is a judicially created concept of estoppel which operates in favor of a third party seeking to bind a principal for the unauthorized act of an apparent agent. Broadway, supra; Interstate Electric Co., supra.
For the doctrine of apparent authority to apply, the principal must first act to manifest the alleged agent’s authority to an innocent third party. Second, the third party must rely reasonably on the manifested authority of the agent. As the Courts of Appeal have correctly held, the principal will be bound for the agent’s actions if the principal has given an innocent third party a reasonable belief the agent had authority to act for the principal. Comfort Heating & Air Conditioning, Inc. v. Brock, 476 So.2d 927 (La.App. 2 Cir.1985); Bytes Welding & Tractor, Inc. v. McDaniel, 441 So.2d 48 (La.App. 3 Cir. 1983); Bomber Contractors, Inc. v. Morrison Engineering & Contracting Company, *109 Inc., 385 So.2d 327 (La.App. 1 Cir.1980). The burden of proving apparent authority is on the party relying on the mandate. Bamber Contractors, supra.
A third party seeking to benefit from the doctrine of apparent authority may not blindly rely upon the assertions of an agent. He has a duty to inquire into the nature and extent of the agent’s power. Buckley v. Woodlawn Development Corp., 233 La. 662, 98 So.2d 92 (1957); Byles Welding, supra; Bamber Contractors, supra.
The standard of appellate review of a trial court’s findings of fact is set forth in Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978) and Canter v. Koehring Co., 283 So.2d 716 (La.1973). Where there is credible evidence before the trier of fact, which furnishes a reasonable factual basis for the trial court’s conclusion, an appellate court should not reverse unless the trial court is clearly wrong. Factual conclusions of the trial court are entitled to great weight since the trial court is in a better position to evaluate the credibility of witnesses, and an appellate court should not disturb those conclusions unless clearly and manifestly erroneous. Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707 (1958); Orlando v. Polito, 228 La. 846, 84 So.2d 433 (1955); Guin v. Commercial Casualty Ins. Co., 224 La. 44, 68 So.2d 752 (1953).
[emphasis added.]
In order to clothe an agent with apparent authority, the principal must make some form of manifestation of that agent’s authority to an innocent third party, and the third party must reasonably rely on the purported authority of the agent as a result [9of the principal’s manifestations. Kobuszewski v. Scriber, 518 So.2d 524 (La.App. 2 Cir. 1987).
Neither Simco, Crump, nor Rodeo ever had any direct contact with Summit. The depositions reveal that the source of the unauthorized binding authority appears to have been Colin Youell/Consortium ’89 and possibly Bramston. William Fowler of Ma-gill Agency (against whom Summit was awarded a $3.6 million default judgment in November 1989 stemming from Magill’s 1989 unauthorized binding of Summit risks) testified in his deposition that he was told by Youell and Bramston that he (Youell) had the authority for Summit, and that Youell told Fowler he would “take care of the situation” after Fowler received numerous letters from Rex Smith of Summit making clear that Summit did not grant Fowler or Magill any binding authority whatsoever.
The trial court expressly stated in its reasons for judgment that it was unable to find any document or evidence whereby Summit granted express binding authority to anyone. Nor did the record reveal any evidence whereby Summit could be seen to have granted any apparent authority to anyone. The appellants make much of the third paragraph of O’Connell’s May 8, 1989 letter to Youell; however, the letter taken as a whole is clear that Summit granted neither Youell nor anyone else binding authority for Summit. The appellant Simco also argues that certain correspondence between O’Connell and Youell shows Summit’s “acquiescence” in the unauthorized binding by the other entities. However, we find that the evidence reflects just the opposite. As indicated by the Affidavit of Rex Smith (and attachments), and the depositions of O’Connell and Little, when Summit discovered the unauthorized binders around June, 1989, Summit immediately undertook notification of all entities they were aware of who were binding Summit without authority.
lioThe evidence in this case supports the conclusion of Business Insurance’s December 11, 1989 article which traces a large scheme by which Youell/Consortium ’89, Bramston, and others victimized Summit and several other small domestic insurance companies. It appears from the record that both Summit and Simco were victims of a fraudulent scheme perpetrated by numerous other entities; Youell/Consortium ’89, Fowler/Magill, Bramston, and John England.
Without the requisite manifestation by the principal (Summit) to the innocent third party (Simco) that the agent(s) had Summit’s authority, Simco cannot prevail. The case of Kobuszewski v. Scriber, supra, is similar. There, Scriber represented to clients and a *110 bank that he was an agent for National Reserve Life Insurance Company, when in fact he had been terminated from that capacity one month earlier. Scriber accepted premiums from clients for annuities, but never forwarded them to the company, and in fact converted them to his personal use. The court declined to hold the insurance company liable, because the company had made no manifestation to the clients that Scriber was their agent.
Accordingly, the judgment of the trial court is affirmed. Appellants to pay the costs of appeal.
AFFIRMED.