493 So.2d 606 (1986)
Alfred B. DAUBE
v.
Liane BRUNO, Whitney National Bank of New Orleans, and Commercial Bank and Trust Company.
No. 85-C-2316.
Supreme Court of Louisiana.
September 8, 1986.
Herschel L. Haag, III, Elizabeth R. Haak, Patrick A. Tally, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, et al., for applicant.
Philip A. Gattuso, Elizabeth J. Futrell, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, et al., for respondent.
DENNIS, Justice.[*]
The issue presented by this case is whether an action which arises in favor of the true owner and payee of a check when a bank pays the instrument on a forged indorsement, see La.R.S. 10:3-419(1), is prescribed by one year as a delictual action under Civil Code article 3492 or by five years as an action on a negotiable instrument under article 3498. The trial court sustained the bank's exception of prescription, *607 concluding that the one year period governed. The true owner of the check appealed. On appeal, the Court of Appeal reversed, holding that the five year limitation applied and that the prescriptive period had not expired. We reverse and reinstate the trial court ruling. The action authorized by La.R.S. 10:3-419(1) by a true owner of a check against a bank for payment on a forged instrument is not an action on a negotiable instrument but is a delictual action subject to a liberative prescription of one year under Civil Code article 3492.
During 1980 Alfred B. Daube worked extensively offshore for J. Ray McDermott & Company, Inc. He instructed McDermott to send his paychecks to his friend, Liane Bruno, who agreed to hold them until he returned from offshore. McDermott drew Daube's paychecks on its bank, Whitney National Bank, and sent them to Bruno. When Bruno received the checks, however, she forged Daube's signature on them, further indorsed the checks with her own signature, and deposited them into her own personal checking account at the Commercial Bank and Trust Company. Thereafter the checks were forwarded for collection by Commercial to the Whitney National Bank and charged against McDermott's account.
Daube assisted in the prosecution of Bruno in hopes of obtaining restitution. When Bruno was allowed to plead guilty to forgery without making restitution to Daube, he filed this suit against Bruno, Commercial, and Whitney seeking to recover the funds totaling $5,235.00 paid on the forged indorsement.
All of the forged checks cleared the banking system over three years before this suit was filed. Whitney filed an exception of prescription of one year based on Civil Code article 3492, which was sustained by the trial court. Daube appealed and the Court of Appeal reversed. 479 So.2d 4 (La.App. 5th Cir.1985). We granted certiorari, 481 So.2d 619 (La.1986).
La.R.S. 10:3-419(1), in pertinent part, provides
(1)
... when a person pays an instrument on a forged indorsement, he is liable to the true owner.
It is undisputed that Daube stated a cause of action against Whitney under this provision of La.R.S. 10:3-419(1). Daube alleged that the Whitney paid the instrument on a forged indorsement and is therefore liable to him because he is its true owner. The only issue is whether this action is prescribed by one or five years.
The Court of Appeal held, and Daube maintains, that his action under La.R.S. 10:3-419(1) to hold Whitney liable for the payments of his checks to Bruno on forged indorsements is an action on a negotiable instrument which is prescribed by five years. The Civil Code provides:
Article 3498. Actions on negotiable or non-negotiable instruments
Actions on negotiable instruments, and on promissory notes whether negotiable or not, are subject to a liberative prescription of five years. This prescription commences to run from the day payment is eligible.
The Whitney, on the other hand, contends that Daube's action is a delictual action which is prescribed by one year. The Civil Code provides:
Article 3492. Delictual actions
Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.
In interpreting the Commercial Laws, La.R.S. 10:1-101 et seq., we must keep in mind the relevant purposes, rules of construction, and principles specifically provided by the legislature for Louisiana's Commercial Laws. La.R.S. 10:X-XXX-XXX. The provisions of the Commercial Laws are to be liberally construed and applied to promote their purposes and policies, which are to simplify, clarify and modernize the law governing commercial transactions; to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and to promote uniformity of the law among the various jurisdictions. *608 La.R.S. 10:1-102(1), (2). Unless displaced by particular provisions of the Commercial Laws of Title 10, however, the other laws of Louisiana shall apply. La. R.S. 10:1-103.
In order to discover the purposes and policies of La.R.S. 10:3-419(1), and to determine to what extent, if any, its particular provisions displace the general principles and laws of Louisiana, we turn first to its source to learn of the problems that it addresses and the aim of the drafters in their solutions.
The commercial laws contained in Title 10 are Louisiana's version of Uniform Commercial Code Article 3. Unlike certain other Articles of the Uniform Commercial Code, Article 3, which contains Section 3-419, is not a preemptive, systematic and comprehensive treatment of its area of coverage. One example of the lack of comprehensiveness and preemptiveness can be seen in its treatment of conversion. Section 3-419 does not establish a comprehensive scheme for determining whether an instrument has been converted. Rather, it sets forth a few particular rules which were singled out for treatment because they either resolved a conflict in or were a change from the former rules found under the NIL. To determine whether an instrument has been converted, reference may be made to the rules under the NIL and the general tort law of conversion. Hawkland & Lawrence UCC Series § 3-101:01 (Art. 3).
Not being comprehensive or systematic, Article 3 of the Uniform Commercial Code cannot be applied as a closed system from which answers to most commercial paper questions can be deductively reasoned. Instead, it must be treated as a set of statutes intended to lay down specific rules chosen by the draftsmen to clear up particular disputes. Unlike interpreting sections of other Articles of the Uniform Commercial Code, it is essential that the coverage of a section of Article 3 not be extended beyond its scope notwithstanding that the particular language chosen may appear to provide a rule broader in scope. Id.
The Uniform Commercial Code Section 3-419(1)(c) provides:
(1) An instrument is converted when

* * * * * *
(c) it is paid on a forged endorsement.
Under the common law, an owner of personal property has the right to enjoy its undisturbed possession. This right extends to the owner of a negotiable instrument. Whenever an owner's right to possession of an instrument is seriously interfered with, the owner has a cause of action in tort for conversion against the person causing the interference. An owner's right to possession is seriously interfered with when another person has exercised control or dominion over the instrument. An instrument is converted when, for example, it has been purchased, payment has been made to an improper party or there has been a refusal to return the instrument to the owner. Hawkland & Lawrence UCC Series § 3-419.01 (Art. 3).
Uniform Commercial Code section 3-419(1)(c) clearly authorizes a cause of action in conversion by the payee of a check against a drawee bank that pays the item on a forged or unauthorized indorsement. See Hawkland & Lawrence, Id., § 3-419.03; J. White & R. Summers, Uniform Commercial Code § 15-16, 586 (1980). According to the drafters, it is a new section which "adopts the prevailing view of decisions holding that payment on a forged indorsement is not an acceptance, but that even though made in good faith it is an exercise in dominion and control over the instrument inconsistent with the rights of the owner, and results in liability for conversion." U.C.C. § 3-419, comment No. 3. Other comments indicate that the action for conversion is in tort, not on the note, and that it is not intended to conflict with liability under other sections. Id., comments nos. 2, 6.
From our review of Uniform Commercial Code section 3-419(1)(c), and the related legislative comments and scholarly writings, we conclude that the section identifies a few patterns of wrongful or improper *609 conduct related to the handling of instruments and authorizes a cause of action in conversion against the tortfeasor as a remedy. Moreover, the section makes it clear that while this action is purely an action of conversion in tort, and not on the instrument, it does not eliminate or conflict with other remedies, whether in contract, warranty or other, under different sections of the Uniform Commercial Code. The section, in effect, refers the bench and bar to the framework of the common law of conversion for answers to the many substantive and procedural questions which may arise, e.g. the statute of limitations for such actions; the outer limits of the cause of action for the inclusion of somewhat similar, but atypical fact patterns.
Except for the deletion of the reference to conversion, the Legislature adopted the substance of Uniform Commercial Code section 3-419(1)(c) when it enacted La.R.S. 10:3-419(1). The Louisiana legislative comment provides that the section was rewritten "to delete reference to common law `conversion', which is foreign to Louisiana." La.R.S. 10:3.419, comment. Otherwise the wording of this section, the provisions of other sections, and their organization and function are virtually identical to that of the Uniform Commercial Code. Moreover, the legislators were undoubtedly aware of the purpose of the Uniform Commercial Code section to establish a conversion action in tort, not on the instrument, without duplicating or eliminating other remedies under the Uniform Commercial Code.
Consequently, the legislative aim must have been to follow the scheme, approach and technique of the Uniform Commercial Code but, as for gap filling, to refer the legal profession to the Louisiana tort law framework rather than to the common law of conversion. Evidently, the lawmakers heeded the advice of the scholars who contend that it is unwise to import conversion theory into Louisiana law because established civil law actions are more appropriate and, in many respects, superior remedies. 2 A.N. Yiannopoulas, Louisiana Civil Law Treatise § 243 pp. 641-642 (1980); Comment, Movable PropertyRemedies of One Out of Possession of Movables, 37 Tul.L.Rev. 843 (1963).
For these reasons, we conclude that La. R.S. 10:3-419(1) authorizes a delictual action when a person pays an instrument on a forged indorsement for which he may be held liable to the true owner. This action is similar in nature to an action by one who has been dispossessed of a movable as a result of an offense or quasi-offense which is an action under the law of delictual obligations. Yiannopoulous, supra, § 243. The action is based on the fault of the defendant, and includes fact patterns such as those that are set forth in La.R.S. 10:3-419(1), and may be directed to the recovery of the movable with damages for the injury plaintiff sustained or for damages only when plaintiff has no longer an interest in the recovery of the movable. Yiannopoulous, supra, § 243; Pisciotta v. DuSaules, 125 So.2d 181 (La.App. 4th Cir.1960); Dangerfield v. Fauver, 19 La.Ann. 171 (Orleans, 1867); Roberts v. Bertrand, 174 So. 201 (La.App. 1st Cir.1937); Muse v. Sharp, 155 So. 300 (La.App. 1st Cir.1934); Hamilton, v. Moss, 265 So.2d 843 (La.App.3d Cir. 1972); Louisiana Power & Light Co. v. Southern Scrap Materials Co., 244 So.2d 638 (La.App. 4th Cir.1971).
As stated above, La.R.S. 10:3-419(1) authorizes a delictual action. It does not, in addition to this delictual action, authorize an action on the instrument. Louisiana follows the model of the Uniform Commercial Code which only provides a tort remedy for an action brought under section 3-419(1)(c). Contractual, warranty and other remedies are provided under different sections. See for example La.R.S. 10:3-413 to 414 (contract), 10:3-417 (warranty). There is no evidence of any legislative intent to depart from this strategic deployment of remedies.
Under the facts alleged by the plaintiff, we conclude that he had but one action, a delictual action against Whitney for the payment of the instruments on the forged indorsements. Because delictual actions *610 are subject to a one year liberative prescription, which expired before suit was filed, the trial court correctly sustained the exception of prescription.
Our conclusion causes us to disagree with the decisions by our court of appeal brethren in both the present case and in Top Crop Seed & Supply Co., Inc. v. Bank of Southwest Louisiana, 457 So.2d 273 (La.App. 3rd Cir.1984) wherein the courts concluded that the action authorized by La. R.S. 10:3-419(1) is an action on the note, not in tort. The appellate courts' interpretation is contrary to the history, purpose, organization and commentary related to the adoption of La.R.S. 10:3-419(1) and is therefore disapproved.[1]
Moreover, the courts of appeal also fell into error in interpreting the concept of an action on a negotiable instrument or a note too broadly. An action on a negotiable or non-negotiable instrument, as envisioned by Civil Code art. 3498, is one by the holder of a note against a defendant whose name is on the note as maker, indorser or in some other capacity. Couch v. Couch Rice Huller Co., 1 Peltier 14 (Orleans App. 1918). The prescriptive period applies only to actions on the instrument itself, those actions for the breach of the contract which the note represents, for the payment of the note according to its terms. Succession of Guillemin, 2 La.Ann. 634 (Orleans 1847). The five year prescriptive period does not apply to ancillary claims arising out of, but foreign to the instrument. A suit which merely involves an instrument, even though it is for the amount of the note, is not on the instrument itself, but for an ancillary claim. An example of an ancillary claim is a suit against a party who assumes a note; such an action has been held to be a personal action prescribed by ten years. Scionneaux v. Waguespack, 32 La.Ann. 283 (La.1880); Ludeling v. Felton, 29 La.Ann. 719 (La.1877); Couch v. Couch Rice Huller Co., supra. By the same reasoning, it is even more clear that a suit for damages against a person for the improper, although good faith, exercise of dominion and control over an instrument, inconsistent with the rights of the owner, is an ancillary tort claim and not an action on the instrument.
Accordingly, the court of appeal judgment is reversed and the judgment of the trial court is reinstated.
REVERSED; TRIAL COURT JUDGMENT REINSTATED.
WATSON, J., recused.
NOTES
[*] Blanche, J., retired, participated in this case ad hoc, in place of Cole, J., the matter having been heard and submitted before Justice Cole replaced Justice Blanche on the Court.
[1] We do not at this time find it necessary to specifically overrule the two cases relied on by the court in Top Crop, as those cases did not deal with actions arising under La.R.S. 10:3-419(1). Strother v. National American Bank, 384 So.2d 592 (La.App. 4th Cir.1980), is distinguishable from the present case as its facts occurred prior to the effective date of Title 10. Furthermore, the facts involved a suit by the maker of the instrument against a third party for cashing the check contrary to a restrictive indorsement rather than on a forged indorsement. As the defendant's action of cashing the check contrary to the restrictive indorsement "contradicted and clearly violated the terms and efficacy of the instrument" the court found the conduct fell under C.C. art. 3540 (present art. 3498), as an action on an instrument, negotiable or otherwise, with a viable life of five years. 384 So.2d at 594.

Top Crop also relied on Johnny Turcich, Jr., Inc. v. First National Bank, 427 So.2d 602 (La. App. 5th Cir.1983), which is distinguishable from the present case because its factual situation was not tortious, and consequently, the dilemma of deciding whether the action prescribed in one or five years did not arise. Rather, the case dealt with the issue of whether a bank's cashing a check contrary to its client's expired stop order was an action on an instrument under art. 3540 (present art. 3498) prescribed by five years or an action in contract between the bank and its customer, prescribed by 10 years. The Turcich court held the action against the bank was an action on a negotiable or non-negotiable bill or note prescribed by five years.