SUCCESSION OF Noel Andre BORDELON, etc.

v.

FIDELITY BROKERAGE SERVICES, INC., et al.

Civ. A. No. 87–00430.

United States District Court, E.D. Louisiana.

Oct. 6, 1987.

Jamie F. Veverica, Gretna, La., for plaintiff.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Nancy Scott Degan, New Orleans, La., for Fidelity Brokerage Services, Inc.

Monroe & Lemann, Benj. R. Slatter Jr., Mark E. Van Horn, New Orleans, La., for Union Elec. Co.

Liskow & Lewis, William R. Pitts, New Orleans, La., for Houston Industries Inc., Portland Gen. Elec. Co.

## ORDER AND REASONS

FELDMAN, District Judge.

Before this Court is defendants' Motion for Summary Judgment submitted by Fidelity Brokerage Services, Inc. and National Financial Services Corporation. Defendants' motion is GRANTED in part and DENIED in part.

This action arises out of the fraudulent indorsement by Bobbie Bordelon of certain stock certificates belonging to his deceased father. Prior to August 15, 1984, Noel A. Bordelon owned 300 shares of Portland General Electric Company, 400 shares of Union Electric Company, and 300 shares of Houston Industries, Inc. After Mr. Bordelon's death on April 1, 1984, Esther Bordelon was named administratrix of her husband's estate.

On August 7, 1984, Noel Bordelon's son, Bobbie, hired Fidelity to sell the Portland, Union, and Houston stock. Before the sales could take place, Fidelity required that Bobbie Bordelon open an account with Fidelity and provide "Use of Certificate" forms granting Bobbie authorization for the transaction from the registered owner. After opening an account with Fidelity and submitting authorizations purportedly bearing the signature of Noel Bordelon, National Financial, a wholly-owned Fidelity subsidiary, guaranteed the indorsement. Fidelity then sold the stock on the market on three separate occasions, from August 15, 1984 to September 19, 1984. Bobbie Bordelon subsequently withdrew the proceeds of sale from his Fidelity account.

Thereafter, in August 1985, Esther Bordelon brought criminal charges against her son for theft of the stock certificates and forgery of Noel Bordelon's signature. On January 6, 1986, Bobbie Bordelon pleaded guilty to theft in exchange for dismissal of the forgery count. As a condition to probation, the 24th Judicial District Court ordered that Bobbie Bordelon pay full restitution to Esther Bordelon. On January 15, 1987, plaintiff instituted this action against Fidelity seeking return of the stock certificates plus any dividends or interest paid by the issuers. Plaintiff amended her complaint to include the issuers, Portland, Union, and Houston, as defendants. Union has asserted a cross-claim against Fidelity and a third party demand against National Financial for indemnification and attorney's fees.

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate when, "viewed in the light most favorable to the party opposing the motion, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir.1987). And "a claim barred by the applicable statute of limitations may properly be disposed of by summary judgment." *Higgenbotham v. Ochsner Foundation Hospital*, 607 F.2d 653, 657 (5th Cir.1979). Since plaintiff's demand asserted against both the broker and the issuers has prescribed, summary judgment is proper as to the main demand.

■ There is no factual dispute regarding the sequence of events. Mrs. Bordelon discovered the fraud perpetrated by her son and brought criminal charges against him in August 1985. On January 6, 1986, Bobbie Bordelon entered a plea agreement. The present action was filed on January 15, 1987. It is clear that plaintiff's claim against Fidelity is time-barred because the action against the broker is one for conversion, sounding in tort. Thus, the one-year prescriptive period of Civil Code Article 3492 applies:

"Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained."

LSA–C.C. art. 3492 (West Supp.1987).

*Quealy v. Paine, Webber Jackson & Curtis, Inc.*, 475 So.2d 756, 760 (La.1985) is instructive. In *Quealy*, the registered owner of 1500 shares of common stock brought an action against the broker and the issuer seeking to recover damages for the unauthorized sale of his stock. As in this case, the issuer filed a third party demand against the broker for indemnification for any amount in which it might be cast on the main demand. Upholding judgment in favor of the owner and against both broker and issuer, the court characterized the action against the broker as one for conversion:

"A conversion consists of an act in derogation of the plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. It is of no importance what subsequent application was made of the converted property, or that defendant derived no benefit from his act."

*Id.* (citation omitted).

The common law tort of conversion has long been recognized as an offense or quasi-offense under Civil Code Article 2315, governed by the one-year prescriptive period of Article 3492. *Madden v. Madden*, 353 So.2d 1079, 1081 (La.App.1977).

■ This Court finds that the action against the issuers is likewise governed by LSA–C.C. Art. 3492 and, therefore, has prescribed. Plaintiff's action against Portland, Union and Houston arises under Louisiana Commercial Laws—Investment Securities (which selectively borrows from the model of the Uniform Commercial Code). Louisiana Revised Statute 10:8–311 provides that:

"[u]nless the owner has ratified an unauthorized indorsement or is otherwise precluded from asserting its ineffectiveness (a) He may assert its ineffectiveness against the issuer ... and (b) An issuer who registers the transfer of security upon the authorized indorsement is subject to liability for improper registration."

LSA–R.S. 10:8–311 (1983). Comment 2 instructs that the "issuers' recourse is against the forger and the guarantor of the latter's signature."

Louisiana courts have not yet determined the prescriptive period applicable in an action arising under R.S. 10:8–311. However, the *Quealy* decision is again a helpful guide. In that case, plaintiff's claim against the issuer arose under Louisiana's Uniform Stock Transfer Act, LSA–R.S. 12:621 *et seq.* The Louisiana Supreme Court upheld the appellate court's finding that the issuer committed a conversion, a delictual action governed by the one-year prescriptive period. Revised Statute 12:630 provided in part:

"If the endorsement or delivery of a certificate, (1) Was procured by fraud or duress, or

*    *    *    *    *    *

If the delivery of a certificate was made (3) Without authority from the owner

*    *    *    *    *    *

... the possession of the certificate may be reclaimed, and the transfer thereof rescinded...."

The appellate court explained the nature of the cause of action against the issuer:

"As the issuer of the stock they had the obligation to return it when learning of the forgery, and having failed to do so exercised the necessary dominion to constitute a conversion."

*Quealy*, 464 So.2d 930 (La.App.1985).

Although the Louisiana Commercial Laws-Investment Securities superseded the Uniform Stock Transfer Act, the remedy available to the registered owner against the issuer remains essentially the same. Like LSA–R.S. 12:630, Revised Statute 10–8:404(2) requires that:

"[w]here an issuer has registered a transfer of security to a person not entitled to it the issuer on demand must deliver a like security to the true owner...."

If delivering a like security would result in overissue, then

"the person entitled to issue or validation may recover from the issuer the price he or the last purchaser for value paid for it with interest from the date of his demand."

LSA–R.S. 10:8–104.

Under both the rescinded Uniform Stock Transfer Act and the existing Louisiana Commercial Laws-Investment Securities, a registered owner who has been victimized by a fraudulent indorsement and transfer of certificates is entitled to recover from the issuer. The Louisiana Supreme Court in *Quealy* determined that such an action is based on the common law tort of conversion. The central features of the wrong and the remedy under the prior Act and the present one are quite similar.

In a similar action for the transfer of a fraudulently indorsed negotiable instrument, the Louisiana Supreme Court held that the one-year prescriptive period for delictual actions applied. The Court said:

"The action authorized by La.R.S. 10:3–419(1) by a true owner of a check against a bank for payment on a forged indorsement is not an action on a negotiable instrument but is a delictual action subject to a liberative prescription of one year under Civil Code article 3492."

*Daube v. Bruno*, 493 So.2d 606, 607 (La. 1986). Like Section 3–419, Section 8–311:

"does not establish a comprehensive scheme for determining whether an instrument has been converted. Rather, it sets forth a few particular rules.... To determine whether an instrument has been converted, reference may be made to the ... general tort law of conversion...."

*Id.* at 608

Guided by *Quealy* and *Daube*, this Court finds that R.S. 10:8–311 authorizes a delictual action, not an action on the instrument itself and that a Louisiana court would so hold. Accordingly, plaintiff's actions against both the broker and the issuers have prescribed because plaintiff does not dispute that the instant suit was filed beyond the one-year prescriptive period of article 3492.

The inquiry does not end, however. Union has asserted a claim for indemnification and attorney's fees against Fidelity and National Financial based on LSA–R.S. 10:8–312 which provides:

"(1) Any person guaranteeing a signature of an indorser of a security warrants that at the time of the signing

(a) The signature was genuine; and

(b) The signer was an appropriate person to indorse; and

(c) The signer had legal capacity to sign.

(2) Any person may guarantee an indorsement of a security and by so doing warrants not only the signature ... but also the rightfulness of the particular transfer in all respects. But no issuer

may require a guarantee of indorsement as a condition to registration of transfer. (3) The foregoing warranties are made to any person taking or dealing with the security in reliance on the guarantee and the guarantor is liable to such person for *any loss resulting from the breach of the warranties.*"

LSA–R.S. 10:8–312 (1983) (emphasis added).

Comment 4 to this Section explains that subsection 3 was

"expressly designed to encourage issuers and their agents to rely upon signature guarantees and to avoid needless waste of time and duplication of effort in ascertaining the facts so guaranteed."

Section 1–106 further instructs that

"[t]he remedies provided by this Title shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed."

LSA–R.S. 10:1–106 (1983).

■ This Court finds that in order to give effect to Section 8–312(3) of Title 10, the term "any loss" in subsection 3 must include attorney's fees. Certainly, attorney's fees incurred by the issuer, Union, in defending this suit are losses "resulting from the breach of the warranties" described in 8–312. *Cf. Quealy, supra* at 763. Summary judgment is inappropriate at this time in regards to the cross-claim and third party demand filed by Union. A genuine issue of material fact exists concerning whether the guarantor in fact breached any warranties when it guaranteed the indorsement on the Bordelon certificates. In addition, a genuine issue of material fact remains regarding the nature of the conduct as between Fidelity Brokerage Services, Inc. and its wholly-owned subsidiary, National Financial Services Corporation.

Accordingly, for the foregoing reasons, defendants' Motion for Summary Judgment submitted by Fidelity and National Financial is GRANTED with regard to plaintiff's main demand. Insofar as genuine issues of material fact remain regarding Union Electric's cross-claim and third party demand, defendants' Motion is DENIED.[1]

---

1. Union's claim for attorney's fees does not fall with dismissal of the main demand. See Wright & Miller, "Federal Practice & Procedure", § 1431 at 163. Dismissal of the main demand does not extinguish this Court's diversity jurisdiction. *See Federman v. Empire Fire & Marine Insurance Co.,* 597 F.2d 798, 811 (2nd Cir.1979).