**WEBB CARTER CONSTRUCTION COMPANY, INC.,**
Plaintiff–Appellee,

v.

**LOUISIANA CENTRAL BANK,**
Defendant–Appellant.

No. 90–4152.

United States Court of Appeals,
Fifth Circuit.

Feb. 4, 1991.

---

J. Michael Percy, Percy, Smith, Foote & Honeycutt, Alexandria, La., for defendant-appellant.

Marc S. Whitfield, Harry J. Philips, Jr., Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for plaintiff-appellee.

Before POLITZ, WILLIAMS, and SMITH, Circuit Judges.

POLITZ, Circuit Judge:

The Louisiana Central Bank appeals an adverse partial summary judgment in favor of Webb Carter Construction Company. Concluding that the action, once cast as a breach of contract claim by a customer against its bank, is not prescribed, we affirm.

### Background

Webb Carter Construction Company, a small Natchez-based close corporation, opened a checking account at Louisiana Central Bank in October 1985. At that time Carter filed a signature card and corporate resolution authorizing only its president and vice president to transact bank business on its behalf.[1] From November

---

1. The corporate resolution, drafted by the Bank, provided in pertinent part

   that the Louisiana Central Bank of Ferriday, La. be and hereby is designated a depository in which the funds of this Corporation may be deposited by its officers, agents and employees, and that Louisiana Central Bank is authorized to recognize any _____ of the individuals listed below [Webb Carter President, C.N. Montgomery, Jr. Vice President] ... To endorse and deposit, from time to time, for immediate credit, or for discount or rediscount, or for collection and subsequent credit, any checks ... or other instruments or orders for the payment of money, payable to, owned or held by this Corporation, but only for the eventual credit of this Corporation....

   \*    \*    \*    \*    \*    \*

   that the Louisiana Central Bank of Ferriday, La. be and it is hereby authorized and requested to accept, honor, cash and pay or transfer, without limit as to amount, and until written

   notice of the revocation of the authority hereby granted is actually received by said Bank, all checks, drafts, and other instruments and orders for the payment of money or otherwise, when drawn, made, given, signed or accepted as by the foregoing resolution provided, whether the same be against an account standing in the name of this Corporation, or in the name of any such officer or agent of this Corporation as such, including all such instruments payable or endorsed to the personal order of the officer or officers or agent or agents signing on behalf of this Corporation, or any other officer or officers or agent or agents of this Corporation, or otherwise, whether tendered in payment of the individual obligation or deposited to the personal account of, or tendered for cashing by any such officer or officers, agent or agents, or otherwise, and said Bank shall not be required, or be under any obligation to inquire as to the circumstances of issuance, or use of any instrument signed in accordance with the

1986 until her arrest in February 1988, Phyllis Paul, a Carter secretary and keypunch operator, diverted checks from Carter and cashed them at the Bank, using her own name. On October 16, 1987, after ten checks had been cashed, Paul delivered to the Bank a second Carter corporate resolution, one which authorized her to transact business on Carter's behalf as the Secretary of the Board of Directors. The form used was virtually identical to the earlier resolution and declared, *inter alia*, "that all transactions by any of the officers or representatives of this Corporation, in its name and for its account with said Bank prior to this meeting, be and the same are hereby approved and ratified."

After discovering Paul's embezzlement Carter sued the Bank, seeking recovery for each of the checks Paul cashed. Carter asserted breach of contract, wrongful negotiation of instruments on unauthorized signatures, and negligence. The Bank moved for summary judgment, claiming that Paul had express authorization to cash the checks, and contending that the claims had prescribed. The court agreed that any La.R.S. 10:3-419(1) negligence claim was time-barred by the one-year liberative prescription article, but expressly took no position on any contract claim arising from the same facts. The court denied summary judgment on the issue of express authorization to cash the checks.

Carter moved for summary judgment on the ten checks cashed prior to delivery of the October 16, 1987 resolution. This motion was granted and judgment was entered in favor of Carter in the amount of $13,898 plus accrued interest. In due course the district court granted Rule 54(b) certification of the finality of this partial summary judgment. We have appellate jurisdiction of that judgment.

### Analysis

In reviewing a summary judgment order we apply the same standard as the trial court, viewing the facts in the light most favorable to the nonmoving party. *Waltman v. International Paper Co.*, 875 F.2d 468 (5th Cir.1989). Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier-of-fact to find for the nonmoving party, there is no genuine issue for trial. *Washington v. Armstrong World Indus.*, 839 F.2d 1121 (5th Cir.1988). Our review of questions of law, including, as here, construction of unambiguous contracts, is *de novo*. *Southern Natural Gas Co. v. Pursue Energy*, 781 F.2d 1079 (5th Cir.1986).

On appeal the Bank reasserts its contention that Carter's cause of action on the checks is solely *ex delicto* rather than *ex contractu*, and is thus time-barred. Carter counters that while a tort action may exist on these facts it nonetheless sought recovery on a contract theory and must prevail.

One difficulty we confront is that both parties rely heavily on negotiable-instrument cases involving forgeries. The record before us contains no evidence of forgery. Paul's actions were illegal, and, if proven, subject her to civil and criminal liability, but her actions were not acts of forgery. She signed her own name for each of the checks cashed and never claimed to be anyone other than Phyllis Paul. As such her offense, and the relevant term involved for purposes of the Uniform Commercial Code, is unauthorized

foregoing resolution, or the application or disposition of such instrument, or the proceeds thereof.
The reverse of the signature card indicated:
Except as otherwise herein provided, items are received for deposit and collection subject to the provisions of the Uniform Commercial Code in effect in this State....
\* \* \* \* \* \*
This financial institution in no case shall be responsible for or be subject to any liabilities to depositor other than those imposed upon it by law for its own lack of good faith or its own failure to exercise ordinary care. The obligation to exercise ordinary care in the handling of items ... shall be measured by the standard of the reasonableness of the procedures established for the transaction involved, and mere clerical error, inadvertence, or oversight without malice, or an honest mistake of judgment, shall not be or constitute as to any transaction a failure to perform such obligations or a failure to exercise ordinary care and in no case shall be deemed wrongful.

indorsement, not forgery.[2] One Louisiana appellate court has explicitly held that forgery under R.S. 10:3–419 encompasses an unauthorized indorsement, *Confederate Welding and Safety Supply v. Bank of the Mid–South,* 458 So.2d 1370 (La.App. 1984), and another has done so implicitly, *Pargas, Inc. v. Estate of Taylor,* 416 So.2d 1358 (La.App.1982). Being aware of no conclusive precedent to the contrary, we thus apply 10:3–419(1).

A second difficulty we face is that Carter has not spelled out its grounds for recovery. The clearest indication of the nature of Carter's claim, as stated in its brief, is that it "was not basing its motion for summary judgment against [the Bank] upon the grounds of negligence or upon the provisions set forth under Louisiana's commercial laws-commercial paper." We perforce assume that the signature card and corporate resolution, both form documents submitted to Carter by the Bank, comprise the basis of its claim.

A case to which the Bank invites our attention, which was discussed at length by the trial court, *Daube v. Bruno,* 493 So.2d 606 (La.1986), offers some guidance. *Daube* posits the typical forgery claim by the true owner of a check against a drawee bank which wrongfully honored a check containing a forged signature. The bank in *Daube* was not the bank in which the corporate account was maintained. Honoring the check could be construed as a violation of the drawee bank's contract with its depositor, but the *Daube* court undertook an expansive view of the legislative history of 10:3–419(1) and held that an action on a check "is similar in nature to an action by one who has been dispossessed of a movable as a result of an offense or quasi-offense which is an action under the law of delictual obligations." 493 So.2d at 609 (citing 2 A.N. Yiannopoulas, *Louisiana Civil Law Treatise* § 243 (1980)). The court also took pains to distinguish the delictual action based on wrongful honoring of the instrument from an action on the instrument itself. Only the latter is an action *ex contractu. Daube,* 493 So.2d at 610.

*Daube* is a clear and well-reasoned statement of the law by the Louisiana Supreme Court, but it is not a dispositive precedent in the case before us. The Bank before us is a *depositary* bank, not a drawee bank.[3] The distinction is significant in that the remedies under the Uniform Commercial Code do not necessarily envision a direct suit, as here, by a true owner against a depositary bank.[4]

Carter invites our attention to *Pargas,* a case relied on by the trial court in its second summary judgment order. In *Pargas* a corporate district manager embezzled checks from his employer, rubber-stamped the corporate indorsement on the checks, added his personal signature below the stamp, and deposited the checks to his personal account. The court held that the bank completely abrogated its duty of reasonable care by cashing the checks because it had no corporate resolution from Pargas

---

2. *See* La.R.S. 10:1–201 ("'Unauthorized' signature or indorsement means one made without actual, implied or apparent authority and includes a forgery."). That an unauthorized indorsement encompasses a forgery does not mean that the reverse is true, as is evident in this case.

3. *See* La.R.S. 10:4–105,
   In this Chapter unless the context otherwise requires:
   (a) "Depositary bank" means the first bank to which an item is transferred for collection even though it is also the payor bank;
   (b) "Payor bank" means a bank by which an item is payable as drawn or accepted....
   *and* Comment 2: "The term payor bank includes a drawee bank...."

4. White and Summers *succinctly note:*

> To determine the bank's responsibility in these cases, it is important to distinguish among depositary banks, collecting banks who are not depositary banks, and payor banks. It is foolhardy to ask collecting banks who are not depositary banks to do any more than pass on instruments in an utterly mechanical way without consideration of anything other than the MICR line. Depositary banks, on the other hand, are in the best position to prevent certain kinds of fraud, particularly those involving indorsements. The drawee bank has the best opportunity to detect problems involving drawer's signatures.
>
> 1 J. White & R. Summers, *Uniform Commercial Code* § 16–7 (3d ed. 1988).

authorizing the employee to act on behalf of the corporation. The court implicitly construed this case as one in contract. *See id.* at 1360 (applying "three-year statute of limitations set forth in R.S. 10:4–406(4)"). We cannot fathom from the opinion whether the depositary bank was also the bank at which Pargas maintained its checking account. *Pargas* is, in some respects, more analogous to the facts at bar, but it both predates *Daube* and emanates from an inferior court.

Another Louisiana case, which neither party cited in brief or oral argument, factors into our resolution today. In *Confederate Welding* a corporation sued a bank which had allowed the corporation's president to indorse corporate checks for deposit to his personal account, even though the corporate resolution on file clearly stated that such was beyond the president's authorized powers. The court found that payment of a check over an unauthorized indorsement is actionable by the true owner against the depositary bank under 10:3–419(1) and affirmed a judgment against the bank, holding that it had failed to meet reasonable business standards. We are cognizant that *Confederate Welding,* which makes no comment as to whether an R.S. 10:3–419(1) action is contractual or delictual, also is antecedent to *Daube* and likewise is the product of an intermediate appellate court.

We are thus possessed of these three precedents, three candles which light our way as an *Erie* court.[5] None is on all fours with the case at bar. Each offers some assistance in our trek through relatively new legal woods for Louisiana. We must determine whether Carter's action is *ex delicto* or *ex contractu* and whether the partial summary judgment appropriately was granted. If we accept the premise that a case involving an unauthorized indorsement is actionable under the forgery provisions of 10:3–419(1), the *Daube* holding that such actions are delictual would resolve the matter. But the Louisiana Supreme Court has not so held, nor has it held that an action by the true owner is permitted against the depositary bank. We are persuaded, rather, by the reasoning of the *Confederate Welding* court which, faced with a similar question, held "LSA–R.S. 10:3–419(1) provides a direct cause of action against a party paying a check over a forged or unauthorized endorsement." 458 So.2d at 1378.

The instant case differs from *Daube* in one dispositive respect: in the case at bar the depositary bank was *also* the bank at which Carter maintained its corporate checking account. In *Daube* the checks were cashed over a forged indorsement at a different depositary bank. We perceive this distinction as critical because the Bank had contractual obligations to Carter flowing from the documents which the Bank required Carter to submit in order to open its account. *Cf. Daube,* 493 So.2d at 610 n. 1 (distinguishing *Johnny Turcich, Jr., Inc. v. First National Bank,* 427 So.2d 602 (La.Ct.App.1983), and noting the possibility of an *"action in contract between the bank and its customer "*) (emphasis supplied). The corporate resolution clearly authorized the Bank to recognize only Webb Carter and C.N. Montgomery as its proper representatives to indorse and deposit checks or other instruments payable to Carter. The resolution also relieved the Bank from any duty of inquiry only for "any instrument signed in accordance with the foregoing resolution." Permitting Paul to cash corporate checks was thus a patent violation of this corporate authorization.

The language of the signature card seeks to limit the Bank's "liabilities to depositor ... [to those remedies] imposed upon it by law for its own lack of good faith or its own failure to exercise ordinary care. The obligation to exercise ordinary care in the handling of items ... shall be measured by the standard of the reasonableness of the procedures established for the transaction involved." Here, the district court's holding that the Bank failed to meet reasonable commercial standards, which is fully consistent with the holdings in *Daube, Confed-*

---

**5.** *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

*erate Welding,* and *Pargas,* suffices to impose such breach of contract liability on the Bank.

■ The Bank's reliance on the "ratification" language in the October 16 resolution is misplaced. Notwithstanding the issue of the validity of the document, "[i]t is well established that in order for ratification to occur the person to be bound must, with full knowledge of all material facts, express an intent to ratify the unauthorized act." *Pargas,* 416 So.2d at 1362. It is uncontested that Carter was wholly unaware of the Paul transactions. Moreover, the ratification clause applies solely to actions by "officers and representatives of this Corporation." Paul was neither. Thus ratification did not occur.

■ The Bank is also estopped from raising any issues regarding Carter's negligent operation of its business. Concededly Paul's ability to obtain with apparent impunity thousands of dollars worth of checks, over a period of several months, raises legitimate questions respecting the soundness of Carter's business practices. Defenses based on such flaws, however, are only open to banks which cash instruments in accordance with reasonable commercial standards. R.S. 10:3–406; *Confederate Welding,* 458 So.2d at 1376. The Bank's failure to have done so in the instant case is dispositive of this issue.[6]

For these reasons the partial summary judgment is AFFIRMED.

---

6. La.R.S. 10:3–406 unquestionably is applicable to the case at bar. *See* Comment 7 thereof.