LAMY, Judge.
The defendant savings and loan institution appeals the lower court’s determination that two individual retirement accounts, which were delivered to a succession pursuant to a court order, be reinstated to the plaintiff, the named beneficiary of one of the accounts and the owner of the remaining account. The defendant asserts a variety of affirmative defenses, in particular, prescription and equitable estoppel.
Factual and Procedural Background The instant matter was brought by the plaintiff, Warren Earl Fontenot, to recover two individual retirement accounts (IRAs) held by the defendant, First Federal Savings of Opelousas (First Federal). The record indicates that these two accounts were created by Mr. Fontenot and his late wife Monez P. Fontenot on April 5, 1982. First Federal was named as the custodian for each of the IRAs. The first account at issue, hereinafter referred to as Account 151, was established by Mr. IgFontenot, as grantor, with Mrs. Fontenot named as the beneficiary. The second account, Account 152, was established by Mrs. Fontenot, as grantor, with Mr. Fontenot named as the beneficiary. Each of the accounts was initially opened with a corpus of $2,000.00. Testimony at trial indicates that each IRA was invested in certificates of deposit rather than a standard savings account. Over the following years, Mr. and Mrs. Fonte-not continued to make deposits to the accounts.
Mrs. Fontenot died on February 19, 1988 leaving her husband, the plaintiff, and a daughter by a previous marriage, Beverly Todd. The record indicates that the ensuing succession proceedings have a complex history. The instant case, not strictly a succession matter, was consolidated in the lower court with a suit by Mr. Fontenot against the succession and a suit by the succession against Beverly Todd.
Mr. Fontenot alleges that, following his wife’s death, he went to First Federal and requested the proceeds in Account 152, that in which he was named as beneficiary. He testified that he was denied access to the funds by the account manager at First Federal, Rose Benoit, who told him that the account could not be released as his wife had died and the funds were part of the succession. Benoit confirmed that Mr. Fontenot arrived at the bank on February 28, 1988 and that she told him the bank required a death certificate before the account could be delivered. Although Benoit testified that she told the plaintiff that he would be required to present a death certificate, she further stated that it was standard policy for the bank to require a judgment of possession or a court order before releasing such an account. Wayne Gilmore, president and chief executive officer of First Federal, confirmed that First Federal employees, including Rose Benoit, are instructed that accounts can only |sbe released pursuant to a judgment of possession or court order if one of the parties is deceased.
The record indicates that, on May 18, 1988, a district judge[1] signed an order appointing Beverly Todd as administratrix of Mrs. Fontenot’s estate. Furthermore, on May 20,1988, the judge signed an order authorizing and directing Todd to pay debts of the succession and specifically ordering First Federal to release, to Todd, the two accounts now at issue in the present matter.[2] Benoit testified that on May 20, Todd came to the bank and, pursuant to the court order, the funds were released to her. Todd testified that she opened a succession account with the First Federal funds.
*866 Benoit testified that she was never contacted by an attorney on behalf of the plaintiff who complained of the release of the funds. Benoit also testified that, in December 1988, an IRA Fair Market Value report was sent to the plaintiff for each of the IRA accounts. These reports, which were entered into evidence, indicate that each of the accounts was reported as having a $0.00 balance.
On August 31, 1993, counsel for the plaintiff directed a letter to First Federal requesting reinstatement of Account 151 and Account 152, alleging that “[n]either of these accounts formed a part of the succession of Monez Fontenot, and hence were improperly paid to Beverly Todd as admin-istratrix of this succession.” The instant matter was instituted on March 24, 1994 when the plaintiff filed a “Petition for | ¿Reinstatement of Individual Retirement Account” against First Federal. No particular theory of recovery was advanced in the petition. Rather, the plaintiff related the creation of the accounts, his inability to access the accounts, the delivery of the accounts to Todd, and then asserted that the accounts had not been reinstated following his letter of August 31, 1993. By way of the petition, he sought reinstatement of each of the accounts retroactive to May 20,1988 plus accrued interest.
In response to the March 1994 petition, First Federal filed an exception of prescription alleging that the action complained of by the plaintiff was an action in tort and, therefore, subject to the prescriptive period of one year provided by La.Civ. Code art. 3492. Any conduct in 1988, therefore, had prescribed before the filing of the petition in 1994. In a subsequent exception of prescription, First Federal argued that IRAs are trust accounts governed by the one-year prescriptive period of La.R.S. 9:2234. Alternatively, First Federal asserted that the five-year prescriptive period of La.Civ.Code art. 3498 is applicable.
Initially, in reasons for judgment dated June 7, 1995, the lower court found that the IRAs are trust agreements and, therefore, the one-year peremptive period of La.R.S. 9:2234 was controlling. Thus, he found that the matter had prescribed. Pursuant to an application for new trial, however, the trial court reversed this earlier judgment. In reasons for judgment rendered on August 18, 1995, the trial court determined that, as for Account 151, that in which the plaintiff was the grantor and Mrs. Fontenot the beneficiary, the ten-year period of La.Civ.Code art. 3499 was applicable and, therefore, the cause of action had not prescribed. As for Account 152, |fithat in which the plaintiff was named as beneficiary, the trial court concluded that La.R.S. 9:2234 could apply, but deferred ruling on this account to the merits.
After the lower court overruled the exception of prescription as to Account 151 and referred the remainder to the merits, First Federal filed an answer to the petition wherein several affirmative defenses were asserted. Namely, the defendant argued that recovery in this matter should be barred by the doctrines of laches and equitable estoppel, as the funds were released pursuant to a court order and suit was not filed until more than five years after the release of the funds. Additionally, First Federal reurged the prescriptive periods asserted in the exceptions of prescription and maintained that any obligation by First Federal had been extinguished by Mr. Fontenot’s receipt of a check from the succession which was in excess of the funds in the accounts at issue. In addition to these defenses, First Federal filed a third party demand against Beverly Todd as Administratrix of the Succession of Monez P. Fontenot.
For our immediate purposes, the next critical stage in this matter was the trial on the merits held on July 29, 1996. Following that trial, the lower court released written reasons for ruling. With regard to Account 151, the court referred to the previously discussed ruling of August 18, 1995 wherein it had been determined that the matter was a personal action and that *867 it had not prescribed pursuant to La.Civ. Code art. 3499. Furthermore, the trial court addressed Account 152, finding La. R.S. 9:2234 applicable, but determining that the one-year period had not commenced to run since First Federal had not proven that a final accounting had been provided to the plaintiff. The trial court ordered that “the balance of IRA # 151 in the Ramount of $6,270.77, plus all legal interest accrued from May 20, 1988, to date, and the balance of IRA # 152 in the amount of $11,892.00, plus all legal interest accrued from May 20, 1988, to date, to be reinstated as if never having been removed.” The court also found in favor of First Federal and against Beverly Todd with regard to the third-party demand. Judgment based on these written reasons was signed on September 27,1996.
On October 4, 1996, the Succession of Monez Fontenot filed a motion for new trial alleging that the succession had never been served with the third party demand. A motion for new trial was “granted as to the third party demand filed by First Federal Savings and Loan Association against Beverly Papano Todd as the administrator of the Estate of Monez Papano Fontenot ...” on October 31,1996.
Limited issues were before the court on the new trial. With regard to the issues now on appeal, the lower court noted that, per reasons rendered September 10, 1996, the exceptions of prescription for Accounts 151 and 152 were overruled and judgment was once again entered in favor of the plaintiff and against First Federal. In deciding matters at issue in the new trial, the lower court found in favor of First Federal and against the succession for repayment of the IRA funds. Furthermore, the lower court made a variety of findings of fact, including the conclusion that, although the plaintiff was named as beneficiary, Account 152 was community property. Judgment in this regard was signed on February 3,1998.
First Federal appeals the lower court’s determination, citing specifically the following paragraph of the February 1998 judgment:
17That there be judgment in favor of Warren Earl Fontenot and against First Federal Savings & Loan reinstating both IRA 151 and 152 as if never removed and that the Exception of Prescription be and it is hereby overruled as per Written Reasons for Judgment dated September 10,1996.
The defendant notes, in its brief to this court, that although the third party demand was granted against the Succession of Monez P. Fontenot and the funds at issue were ordered reinstated, appeal is necessary “because of accrued interest on said I.R.A. account and succession administration costs, there are no longer sufficient funds in the succession to restore the I.R.A. Accounts to defendant-appellant.”
First Federal advances four assignments of error to this court. The first assignment addresses the assertion that the court order was relied on in good faith and that the plaintiff is equitably estopped from challenging the order. In their second assignment, First Federal addresses the overruling of the exceptions of prescription. First Federal continues to argue that the one-year prescriptive periods attendant to a delictual action or pursuant to La.R.S. 9:2234 are applicable. Furthermore, contrary to the findings of the lower court, First Federal asserts that a final accounting was provided to the plaintiff on December 31, 1988. In the alternative, First Federal argues that the IRAs were invested in Certificates of Deposit and, therefore, the five-year period of 3498 should be applicable. Next, the defendant maintains that the lower court erred in failing to apply the federal doctrine of laches. According to this argument, since the accounts were formed pursuant to federal law, laches should prevent recovery on a suit filed more than five years after the conduct of which the plaintiff complains. Finally, the defendant maintains that the lower court should have found that any obligation was extinguished when the *868 funds were delivered to the |ssuccession and, in turn, the succession made the offer of a $15,297.32 check, a sum in excess of the two accounts tendered by the bank.
Discussion
Rather than addressing the defendant’s assignments of error in order, we will address the assignments as they individually relate to each of the two accounts.
Account 151
As explained above, Account 151 is that in which the plaintiff was named as the grantor and Mrs. Fontenot was named as beneficiary. The trial court overruled the exception of prescription on this account, finding that it was a personal action and controlled by the ten-year prescriptive period of La.Civ.Code art. 3499. First Federal argues, as it does with Account 152, that this action is controlled by the one-year periods of La.R.S. 9:2234 and La.Civ.Code art. 3492, or, alternatively, is subject to the five-year period of La.Civ. Code art. 3498.
In written reasons rendered August 18, 1995, the lower court discussed the ten-year period of La.Civ.Code art. 3499 attendant to personal actions and noted that the comments to the article provide that the ten-year period is applicable only in the absence of a specific legislative provision for a shorter or longer period. The lower court found as follows:
IRA Account Number 151 was established by the plaintiff, Mr. Warren Earl Fontenot, as the grantor, and his wife was setup [sic] as the beneficiary. As to this account, it is clear that LSA-R.S. 9:2234 does not apply since that statute governs actions between a “beneficiary” and a “trustee” and does not apply to “grantors” and “trustee”. Furthermore, there being no other applicable prescriptive period in the Trust Code pertinent to the facts at bar, it is the conclusion of the Court that petitioner’s claim as relates to IRA Account Number 151 has not prescribed and is governed by Civil Code Article 3499.
|9We now turn to the issue of whether the lower court erred in determining La. Civ.Code art. 3499 to be controlling as to Account 151 or whether a more particular provision was applicable.
Article 3499 of the Louisiana Civil Code provides “[u]nless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years.” Thus, Article 3499 is only to be relied upon in the absence of a more specific period.
First Federal maintains that the trial court erred in not applying the one-year period of La.R.S. 9:2234 to both accounts since they are trust agreements. This statute provides, in part: “An action by a beneficiary against a trustee is prescribed by one year, to begin from the day the trustee renders his final account to the beneficiary.”
Our review reveals no error in the lower court’s determination that La.R.S. 9:2234 is inapplicable to Account 151. The statute expressly states that the one-year period described is for an action by a beneficiary against a trustee. As stated above, the plaintiff was not the beneficiary of Account 151, but was the grantor. Thus, the lower court’s reasons correctly reflect the inapplicability of La.R.S. 9:2234 to the plaintiffs claim on Account 151.
Further, we find no merit in First Federal’s assertion that the instant matter is controlled by La.Civ.Code art. 3498 since, according to its argument, the certificates of deposit are, in essence, promissory notes. Article 3498 provides: “Actions on instruments, whether negotiable or not, and on promissory notes, whether negotiable or not, are subject to a liberative prescription of five years. This prescription commences to run from the day payment is exigible.”
Loin considering La.Civ.Code art. 3498, the Louisiana Supreme Court stated as follows in Daube v. Bruno, 493 So.2d 606, 610 (La.1986):
The prescriptive period [of Article 3498] applies only to actions on the instrument *869 itself, those actions for the breach of the contract which the note represents, for the payment of the note according to its terms. Succession of Guillemin, 2 La. Ann. 634 (Orleans 1847). The five year prescriptive period does not apply to ancillary claims arising out of, but foreign to the instrument. A suit which merely involves an instrument, even though it is for the amount of the note, is not on the instrument itself, but for an ancillary claim. An example of an ancillary claim is a suit against a party who assumes a note; such an action has been held to be a personal action prescribed by ten years. Scionneaux v. Waguespack, 32 La.Ann. 283 (La.1880); Ludeling v. Felton, 29 La.Ann. 719 (La.1877); Couch v. Couch Rice Huller Co., supra, [1 Pelt. 14 (La.App.Orleans 1918)]. By the same reasoning, it is even more clear that a suit for damages against a person for the improper, although good faith, exercise of dominion, and control over an instrument, inconsistent with the rights of the owners, is an ancillary tort claim and not an action on the instrument.
We conclude that, in the present case too, any action is ancillary and does not involve the actual certificates of deposit into which the funds were invested. Therefore, La. Civ.Code art. 3498 is inapplicable. Furthermore, the above-quoted portion of Daube brings us to the remaining prescriptive period urged by the defendant, that for a delictual action.
In this regard, First Federal argues that the conduct complained of by the plaintiff is in the nature of a tort, namely, a conversion or breach of fiduciary duty. These types of claims are controlled by La.Civ. Code art. 3492, which provides as follows:
Delictual actions are subject to a li-berative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Product Liability Act or state law governing product liability actions in effect at the time of the injury or damage.
1 nit is this statute we find most specifically addresses the plaintiffs action with regard to Account 151. The plaintiff complains, in sum, that First Federal negligently relied on the court order and wrongly released the account. This type of action would appear to best be viewed as a tortious action falling within the confines of La.Civ.Code art. 3492.
In Johnson v. Concordia Bank & Trust Co., 95-1187 (La.App. 3 Cir. 3/27/96); 671 So.2d 1093, a panel of this court addressed a similar situation. In Johnson, the plaintiff owned a certificate of deposit and brought suit against his bank for disbursing accrued interest to his tutor rather than reinvesting the interest as required by court order. The plaintiff alleged that the suit was a personal action and, thus, controlled by a ten-year prescriptive period. This court found otherwise concluding that the plaintiff alleged tortious conduct. In reaching this conclusion, the panel reasoned:
Plaintiff alleges that Concordia Bank wrongfully disbursed his earned interest to Adams in derogation of a previously existing court order and in violation of the Uniform Fiduciaries Law. In Labbe v. Premier Bank, 618 So.2d 45, 46 (La. App. 3 Cir.1993), this court reasoned as follows:
A conversion consists of an act in derogation of the plaintiff’s possessory rights, and any wrongful exercise or assumption of authority over another’s goods, depriving him of the possession, permanently or for an indefinite time, is a conversion-
[[Image here]]
Clearly, the allegations of plaintiffs petition and his prayer for relief contemplate that he is seeking redress for conversion, an act in derogation of his pos-sessory rights, on the part of Concordia Bank. Since conversion is a tort, the *870 prescriptive period for delictual actions applies to plaintiffs action.
| ,j,/d at p. 7; 1097-98. We find the instant matter analogous as the plaintiffs complaint is essentially that, by relying on the court order and releasing the account to Todd, First Federal acted contrary to his possessory rights or, in the least, acted negligently. Finding that the complaint lodged by the plaintiff was one for tortious conduct, conduct controlled by La.Civ. Code art. 3492, we conclude that the lower court erred in applying the prescriptive period of La.Civ.Code art. 3499 and in overruling the defendant’s exception of prescription as it relates to Account 151.
Account 152
With regard to Account 152, that in which the plaintiff was named as beneficiary, we find no error in the lower court’s reliance on La.R.S. 9:2234. Although that statute was inapplicable to Account 151 for the reasons addressed above, the parties’ positions differed with regard to Account 152. While First Federal continued to be the custodian/trustee of the account, the plaintiff was the named beneficiary. Thus, La.R.S. 9:2234 appears to be tailored to the instant matter. The statute provides: “An action by a beneficiary against a trustee is prescribed by one year, to begin from the day the trustee renders his final account to the beneficiary.” (Emphasis added.)
In finding the statute applicable to Account 152, the lower court explained as follows:
Neither has IRA Account No. 152 prescribed pursuant to LSA-R.S. 9:2234 of the Louisiana Trust Code insofar as defendant has not proved that it rendered a final account to Warren Earl Fontenot (beneficiary) in order to commence the running of the prescriptive period. Defendant’s exception of prescription, which was referred to the merits, is overruled.
|, sWhfle we find no error in the determination regarding the applicability of La.R.S. 9:2234, our review of the record indicates that, contrary to the lower court’s finding, the plaintiff received an accounting sufficient to commence prescription.
La.R.S. 9:2088 provides that a trustee must account to the beneficiary as follows:
A. A trustee is under a duty to a beneficiary to keep and render clear and accurate accounts of the administration of the trust.
B. A trustee shall render to a beneficiary or his legal representative at least once a year a clear and accurate account covering his administration for the preceding year. His first annual account shall relate to the calendar year during which he became responsible for the trust property, or, at his option, the first accounting period of not more than twelve months and shall be rendered within ninety days after the expiration of that calendar year or accounting period. Each annual account shall show in detail all receipts and disbursements of cash and all receipts and deliveries of other trust property during the year, and shall set forth a list of all items of the trust property at the end of the year.
C. A trustee upon the termination, revocation, or rescission of the trust, or upon his resignation or removal, shall render to a beneficiary or his legal representative his final account covering the period elapsed since his most recent annual account (or, should the trust have terminated, or have been revoked or rescinded, during the first year, the period elapsed since he became responsible for the trust property), and setting forth the same information required for annual accounts.
D. A written approval by a beneficiary or his legal representative of an account rendered by a trustee shall be conclusive against the beneficiary with respect to all matters disclosed in the account. If a beneficiary or his legal representative fail or refuse to approve *871 in writing an account rendered by a trustee, a trustee may apply to the proper court for an approval contradictorily with a beneficiary. An approval obtained form the proper court is conclusive against a beneficiary with respect to all matters disclosed in the account so approved.
| mE. A trustee shall not be under a duty, to file his accounts with the court unless he is expressly required to do so by the trust instrument or by the proper court.
According to Rose Benoit, Mr. Fontenot was provided with IRA Fair Market Value Reports at the end of 1988 which showed that the accounts had been closed. These reports, which were entered into evidence and are dated December 31, 1988, indicate the beginning balance of each account, the amount of interest earned on each account during the year, the amount withdrawn, and the loss of earnings penalty incurred. The statement for each account reveals “.00” as the fair market value of each account. Her testimony indicates that the forms were mailed to 451 E. Franklin Street in Opelousas, Louisiana, the address listed for the owners of the accounts, Warren E. Fontenot and Monez P. Fonte-not. Benoit confirmed that the fair market value forms are those required by federal IRA trust regulations for annual and final accounts, are sent to customers twice a year, once at the end of April and another on December 31, and that the forms provide information regarding activity on the account, including information on interest growth and any deposits made.
Although Mr. Fontenot denied receiving any formal accounting, a contention contrary to Benoit’s testimony discussed above, his testimony reveals that he did have notice that Todd had obtained the funds. First, we note Mr. Fontenot stated that he learned from his attorney in May 1988 that Todd had obtained the accounts. Further, in a hearing held on May 26, 1995, wherein the prescription was at issue, Mr. Fontenot testified that he received a tax notice from First Federal regarding the released funds. When asked about the timing of this notice, he stated: “I don’t remember exactly when, it was maybe two weeks after the money was released so I went back to First | ^Federal and met Ms. Benoit and told her about it.” He further stated that, after the tax error had been resolved, he received a corrected tax notice.
Our review of the record reveals that the year-end accounting by First Federal as well as Mr. Fontenot’s admission of fairly contemporaneous knowledge of the withdrawal, acted as sufficient notice to commence the one-year prescriptive periods of either La.R.S. 9:2088 or La.Civ. Code art. 3492. We conclude that it was error for the lower court to find otherwise.
Given our disposition of the above, any discussion regarding the plaintiffs remaining assignments is pretermitted.
DECREE
For the foregoing reasons the judgment of the lower court is reversed as it relates to the reinstatement of the individual retirement accounts at issue and the overruling of the exceptions of prescription filed by the defendant, First Federal Savings of Opelousas. All costs of this appeal are assessed to the plaintiff, Warren Earl Fon-tenot.
REVERSED AND RENDERED.

. The record indicates that, during its history, this matter has been handled by various judges of the Twenty-Seventh Judicial District Court.

. In addition to Account 151 and Account 152, the lower court’s order also encompassed other accounts of Mrs. Fontenot. These two IRA accounts, however, are all that are at issue in the matter sub judice.