807 So.2d 1190 (2002)
LOUISIANA INDUSTRIES FOR THE DISABLED, INC.
v.
PREMIER BANK, NATIONAL ASSOCIATION.
No. 2000 CA 2946.
Court of Appeal of Louisiana, First Circuit.
February 15, 2002.
*1191 Kathryn Wyble, Baton Rouge, for Plaintiff-Appellant Louisiana Industries for the Disabled, Inc.
Amy Groves Lowe, Baton Rouge, for Defendant-Appellee Premier Bank, National Association.
Before: FOIL and PETTIGREW, JJ., and KLINE,[1] J. Pro Tem.
PETTIGREW, J.
In this action, plaintiff non-profit group seeks to recover from defendant bank amounts of seven checks that were deposited into said bank through alleged fraudulent indorsements.

*1192 FACTS
Louisiana Industries for the Disabled, Inc. ("LIFTD") is a non-profit organization organized under the laws of the State of Louisiana. LIFTD provides services such as skills evaluation, job development, and educational programs to disabled citizens. In April of 1990, LIFTD leased computers, printers, monitors, and software from Community Training Management and Evaluation.[2] There is evidence within the record to indicate that Community Training Management and Evaluation is also known as Community Management & Training Systems, Inc. (MTS). Inexplicably, at some point, LIFTD began forwarding its monthly lease payments of $3,390.00 to Management Training Systems, Inc. ("Management Training"). Through checks drawn on its account at Hibernia National Bank ("Hibernia"), LIFTD made its payments payable to "MTS, Inc." at 8221 Summa Avenue, Suite "E", Baton Rouge, Louisiana.
In late January of 1994, Management Training notified LIFTD that it had not received a lease payment since September 1993. In February 1994, LIFTD responded that it had forwarded rental checks each month, which had subsequently been negotiated and returned. Management Training advised LIFTD in March 1994 that despite a thorough search, it had no record of any lease payments by LIFTD beginning in October 1993.
In April 1994, LIFTD mailed its lease payment made payable to "MTS, Inc." to Management Training's new address of 8130 Summa Avenue. LIFTD traced this check in an attempt to discover how the previous six checks had been negotiated. Upon receipt of the April lease check following negotiation, LIFTD contacted defendant, Premier Bank, National Association ("Premier")(presently, "Bank One, Louisiana, National Association"), which maintained the account into which the check had been deposited.
Further investigation revealed that all of the checks had been indorsed "MTS to Scene Media Group `For Deposit Only'" and deposited into the same account at Premier. The initial check, dated 10/14/93, reflected a deposit date of 10/19/93, and bore the indorsement,

MTS

Medical Transcription Services to SCENE Media Group, LTD. [account number] For Deposit only
It was also learned that the owner of the account, an individual named Eugene Hickman, had previously advised Premier employees that he operated several companies under an "umbrella company", Scene Media Group. Accordingly, Mr. Hickman was permitted to deposit checks made out to his other corporations into his Scene Media Group account at Premier. In sum, seven checks issued by LIFTD totaling $27,120.00 were deposited into Mr. Hickman's account at Premier.[3] Mr. Hickman later pleaded guilty and was subsequently ordered to pay restitution to LIFTD in the *1193 sum of $27,120.00. Of this sum, LIFTD has received payments totaling $1,556.00.
LIFTD instituted the instant action against Premier and alleged that Premier, as the collecting bank on the checks at issue, breached its transfer warranty and failed to insure that all signatures on the checks were authentic and authorized. In support of this contention, LIFTD cites and relies upon La. R.S. 10:4-205, and claims Premier is liable to LIFTD for damages equivalent to the amount of its loss together with interest and expenses.

ACTION OF THE TRIAL COURT
Both parties filed motions for summary judgment. Following a hearing held on November 6, 2000, the district court denied the summary judgment motion filed by LIFTD, and granted the motion for summary judgment filed on behalf of Premier. From this judgment, LIFTD has appealed.

SPECIFICATION OF ERRORS
In connection with its appeal in this matter, LIFTD has assigned the following errors:
1. The District Court erred in granting the Motion for Summary Judgment filed by defendant, Bank One, the successor in interest to Premier Bank dismissing [LIFTD's] claims.
2. The District Court erred in denying the Motion for Summary Judgment filed by the plaintiff, Louisiana Industries for the Disabled, Inc.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966 B. Summary judgment is favored and "is designed to secure the just, speedy, and inexpensive determination of every action." La.Code Civ. P. art. 966 C(2).
The burden of proof on a motion for summary judgment is set forth in La.Code Civ. P. art. 966 C(2):
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
The initial burden of proof remains with the mover and is not shifted to the non-moving party until the mover has properly supported the motion and carried the initial burden of proof. Only then must the non-moving party "submit evidence showing the existence of specific facts establishing a genuine issue of material fact." See Scott v. McDaniel, 96-1509, p. 5 (La.App. 1 Cir. 5/9/97), 694 So.2d 1189, 1191-1192, writ denied, 97-1551 (La.9/26/97), 701 So.2d 991. If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La. Code Civ. P. arts. 966 and 967.
*1194 In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Sanders, 96-1751 at 7, 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Walker v. Phi Beta Sigma Fraternity (RHO Chapter), 96-2345, p. 6 (La. App. 1 Cir. 12/29/97), 706 So.2d 525, 528.

DISCUSSION
Throughout this litigation, LIFTD has maintained that "[p]ursuant to La. R.S. 10:4-207, defendant, Premier ..., as the collecting bank warranted that all signatures on the checks were authentic and authorized." In support of this position, LIFTD cites and relies on the case of Kobuszewski v. Scriber, 518 So.2d 524 (La. App. 2 Cir.1987). In Kobuszewski, defendant Scriber represented himself to be an independent insurance agent, and opened two checking accounts, in two different banks, under the name of an insurance company he no longer represented. Defrauded investors filed suit against Scriber and the insurance company. The investors further named both banks as defendants claiming that said institutions allowed Scriber to open accounts in the name of the insurance company without first determining whether he had the authority to do so. The district court rendered judgment in favor of the investors, and the defendants appealed. On appeal, the second circuit held that a maker of a check has a direct cause of action against a collecting bank under the warranties of La. R.S. 10:4-207. The second circuit, speaking in Kobuszewski, stated:
The purpose in allowing the makers, as third party beneficiaries, to proceed against a collecting bank for payment over a forged indorsement is to avoid the circuity of actions which would result from requiring the maker to sue only the maker's bank and forcing the maker's bank then to file suit against the collecting bank.
Kobuszewski, 518 So.2d at 533.
In the instant case, Premier responds with the argument that support for the district court's decision to grant summary judgment in its favor can be based on several legal grounds. First, Premier asserts that pursuant to La. R.S. 10:3-406(a):
A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.
Copies of the front and back sides of the checks at issue were filed into the record in this matter. We note that all seven checks were made payable simply to "MTS, Inc." The initial check bore the indorsement "MTS, Medical Transcription Service to SCENE Media Group, Ltd.... For Deposit Only." The remaining six checks were indorsed "MTS to SCENE Media Group ... For Deposit Only."
Despite the fact that Medical Transcription Service, Inc. is the legal name of an actual corporation registered with the Louisiana Secretary of State, the indorsement is nevertheless a forgery pursuant to La. R.S. 10:3-110. Louisiana Revised Statute 10:3-110(a), provides, in pertinent part, that "[t]he person to whom an instrument is initially payable is determined by the intent of the person ... signing as ... the issuer of the instrument." Because Medical Transcription Service, Inc. was not the intended payee from the standpoint *1195 of the issuer, LIFTD, the indorsement is a forgery.
Premier asserts that based upon LIFTD's failure to timely inspect its monthly banking statements and its corresponding failure to promptly discover and report the alleged forgeries reflected therein, LIFTD is precluded, pursuant to La. R.S. 10:4-406, from asserting the alleged forgeries against it. Louisiana Revised Statute 10:4-406, provides, in pertinent part, that:
(c) If a bank sends or makes available a statement of account or items pursuant to Subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.
(d) If the bank proves that the customer failed, with respect to an item, to comply with the duties imposed on the customer by Subsection (c), the customer is precluded from asserting against the bank:
. . . .
(2) the customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding thirty days, in which to examine the item or statement of account and notify the bank.
In Gulf States Section, PGA, Inc. v. Whitney National Bank of New Orleans, 96-0844 (La.App. 4 Cir. 2/12/97), 689 So.2d 638, the court held that the aforementioned statutes are not mutually exclusive, and that the plaintiffs in Gulf States could have been precluded from recovering on forgeries under either statute. The court further stated:
Once the plaintiff establishes that the bank has paid on a forged instrument, the burden shifts to the bank to prove three things to preclude the plaintiff from recovering on the forged instrument: (1) the customer negligently managed his account; (2) the negligence substantially contributed to the forgery; and (3) the bank paid the forged instrument(s) in accordance with reasonable commercial banking industry standards.
Gulf States, 96-0844, at 7, 689 So.2d at 642 (citations omitted).
Premier further asserts that LIFTD was negligent in making its lease payments payable to "MTS, Inc." when its equipment lease reflects the name of the lessor as "Community Training Management and Evaluation." Even if we were to assume that the correct name of LIFTD's lessor was "Management Training Systems, Inc.", LIFTD's failure to spell out the name of its intended payee significantly contributed to the alteration of the checks. Additionally, Premier avers that the indorsement "Medical Transcription Service" on the first check plainly and unambiguously reveals that the instrument was negotiated by an entity other than LIFTD's intended payee. Premier takes the position that had LIFTD discovered and reported this fraud timely, it could have prevented Medical Transcription Service, Inc. from receiving any additional payments from LIFTD.
The record in this matter contained a copy of the deposition of Lisa D. Broussard, *1196 who was a forgery/fraud investigator with Premier at the time of this incident. Ms. Broussard testified that it was LIFTD's payor bank, Hibernia, that first contacted Premier regarding the checks at issue. Ms. Broussard stated that upon speaking with Mr. Hickman, the Premier customer into whose account the checks were deposited, she was advised that he had several companies operating under an umbrella company, Scene Media Group. Mr. Hickman purportedly told Ms. Broussard that when he opened his account, a Premier branch manager authorized him to make deposits payable to his other companies into his Scene Media account. Ms. Broussard testified that through several telephone discussions with Mr. Hickman, he faxed to her verification from the Louisiana Secretary of State that Medical Transcription Service, Inc. was an actual corporation.
Considering the foregoing, this court is of the opinion that Premier has met its burden and established that (1) LIFTD negligently managed its account; (2) LIFTD's negligence substantially contributed to the forgery by Mr. Hickman; and (3) Premier collected on the forged instrument(s) in accordance with reasonable commercial banking industry standards. Thus, LIFTD is precluded from recovering on the forged instruments.
Finally, we note that LIFTD also contends that the provisions of La. R.S. 10:4-406 apply only to the relationship between LIFTD and its own payor bank, Hibernia, and that said provisions could not be applied between LIFTD and the collecting bank, Premier. We disagree. In Graham v. Strother, 28,892, p. 5 (La. App. 2 Cir. 12/11/96), 684 So.2d 1088, 1091, writ denied, 97-0118 (La.3/7/97), 690 So.2d 20, the second circuit expanded upon its earlier holding in Kobuszewski, and held that "if the maker of a check is allowed to sue a collecting bank directly [as the second circuit previously held in Kobuszewski], then collecting banks must be given the same protection they would have been given in a third party action, and must be allowed to assert the 4-406 defenses."
Although neither side has raised this point, it is the opinion of this court that the district court's grant of summary judgment in favor of Premier is supported on still another ground. Louisiana Revised Statute 10:3-404(b) provides in pertinent part:
(b) If ... the person identified as payee of an instrument is a fictitious person, the following rules apply until the instrument is negotiated by special indorsement:
. . . .
(2) An indorsement by any person in the name of the payee stated in the instrument is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.
LIFTD was the maker of the instrument and placed it in commerce. It was LIFTD who made the instrument payable to a fictitious payee inasmuch as MTS, Inc. is not the legal name of either the intended payee, Management Training Service, or the resulting payee, Medical Transcription Service. As between LIFTD and Premier, the actions of LIFTD substantially contributed to the loss. Because LIFTD might have prevented the loss from occurring altogether had it exercised ordinary care, it is LIFTD that must bear the loss.
We agree with the district court's denial of LIFTD's motion for summary judgment and its grant of summary judgment in favor of Premier that resulted in the dismissal of LIFTD's claims. The errors assigned by LIFTD are without merit.

*1197 CONCLUSION
For the reasons set forth above, the judgment of the district court is hereby affirmed. All costs associated with this appeal shall be assessed against plaintiff, Louisiana Industries for the Disabled, Inc.
AFFIRMED.
NOTES
[1] Judge William F. Kline, Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] In its petition and supporting affidavits, LIFTD alleges "[s]ince 1991, [LIFTD] leased computers, printers and software from Management Training Systems, Inc. and forwarded monthly checks to `MTS, Inc.' at 8130 Summa Drive." However, a copy of an unexecuted lease provided by LIFTD in response to a discovery request by Premier indicates that LIFTD leased computers, printers, monitors and software from Community Training Management and Evaluation, P.O. Box 1723, Baton Rouge, Louisiana, commencing April 1, 1990.
[3] It appears from the record that Eugene Hickman pleaded guilty before the 19th Judicial District Court on March 28, 1995, to one count of felony theft in connection with the unauthorized conversion of seven (7) different checks for his personal use between October 14, 1993 and February 21, 1995.