|,Judge MICHAEL E. KIRBY.
The Roman Catholic Church of the Archdiocese of New Orleans (“Archdiocese”) filed suit May 7, 2001 against Shell New Orleans Federal Credit Union (“Shell”) to collect on checks which had contained unauthorized or missing indorse-ments. Previously, Shell merged with St. Alphonsus Credit Union (“SACU”) oh November 15, 2000.
Allegedly, the Archdiocese drew checks on its account at the Whitney National Bank (“Whitney”). The checks were made out to various payees. The checks came into the possession of George J. Heyd (“Heyd”), treasurer of SACU, who marked these checks “for deposit” and then systematically deposited the checks into a non-descript regular business checking account. SACU accepted the checks from Heyd when they had not been indorsed by the payees. Heyd then misappropriated the funds through self-dealing and otherwise diverted the funds to himself in an embezzlement scheme. The missing funds total $189, 318.34.
The suit alleges that the checks were not properly payable and were paid in contravention to La. R.S. 10:4-401[1]; that Shell, as successor in interest to SACU, is *1144 | fiable to the Whitney for breach of its presentment warranties as set out in La. R.S. 10:3-417[2]; and that Whitney has sub-rogated and assigned its rights to collect the value of the checks to the Archdiocese.
Shell filed exceptions of no right of action and prescription. On December 11, 2001, the trial court sustained the no right of action exception and found the prescription argument moot. Specifically, the court found that “the Archdiocese |3failed to take ordinary measures to safeguard its checks/ or accounts, and that this failure substantially contributed to the making of the forged indorsements and consequently it is precluded from asserting those in-dorsements against SACU and its successor in interest Shell.”
*1145 The peremptory exception of no right of action questions whether the party against whom it is asserted has an interest in judicially enforcing the right alleged against the exceptor. Touzet v. V.S.M. Seafood Services, Inc., 96-0225, p. 2 (La. App. 4 Cir. 3/27/96), 672 So.2d 1011, 1012. When considering the exception, the court must ask whether the plaintiff belongs to a particular class for which the law grants a remedy for a particular grievance or whether the plaintiff has an interest in judicially enforcing the right asserted. Id. at pp. 2-3, 672 So.2d at 1012. See also, Babineaux v. Pemie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972); Simmons v. Templeton, 99-1978 (La.App. 4 Cir. 4/12/00), 762 So.2d 63.[3]
Here, the Archdiocese has a right of action in its own right pursuant to La, R.S. 10:4-205[4], and as assignees of presentment warranties pursuant to La. R.S. 10:3-417.
Here, the trial court did not distinguish between the Archdiocese’s right to bring the suit and whether or not it will prevail on the merits. In its ruling, the trial court proceeded to examine the facts and to rule on the merits of the case, essentially finding that the Archdiocese had been negligent in not properly | ¿monitoring its account, and that it had not used ordinary care pursuant to La. R.S. 10:3-406(a)[5]. In so doing, the trial court erred.
The ruling maintaining the exception of no right of action is reversed.
REVERSED.

. La. R.S. 10:4-401 provides:
(a) A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank.
(b) (Reserved)
(c) A bank may charge against the account of a customer a check that is otherwise properly payable from the account, even though payment was made before the date of the check, unless the customer has given notice to the bank of the postdating describing the check with reasonable certainty. The notice is effective for the period stated in R.S. 10:4-403(b) for stop-payment orders, and must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it before the bank takes any action with respect to the check described in R.S. 10:4-303. If a bank charges against the account of a customer a check before the date stated in the notice of postdating, the bank is liable for damages proximately caused by its act. Such *1144 liability may include damages for dishonor of subsequent items under R.S. 10:4-402.
(d)A bank that in good faith makes payment to a holder may charge the indicated account of its customer according to:
(1) the original terms of the altered item; or
(2) the terms of the completed item, even though the bank knows the item has been completed unless the bank has notice that the completion was improper.

. La. R.S. 10:3-417 provides:
(a) If an unaccepted draft is presented to the drawee for payment or acceptance and the drawee pays or accepts the draft, (i) the person obtaining payment or acceptance, at the time of presentment, and (ii) a previous transferor of the draft, at the time of transfer, warrant to the drawee making payment or accepting the draft in good faith that:
(1) the warrantor is, or was, at the time the warrantor transferred the draft, a person entitled to enforce the draft or authorized to obtain payment or acceptance of the draft on behalf of a person entitled to enforce the draft;
(2) the draft has not been altered; and
(3) the warrantor has no knowledge that the signature of the drawer of the draft is unauthorized.
(b) A drawee making payment may recover from any warrantor damages for breach of warranty equal to the amount paid by the drawee less the amount the drawee received or is entitled to receive from the drawer because of the payment. In addition, tire draw-ee is entitled to compensation for expenses and loss of interest resulting from the breach. The right of the drawee to recover damages under this Subsection is not affected by any failure of the drawee to exercise ordinary care in making payment. If the drawee accepts the draft, breach of warranty is a defense to the obligation of the acceptor. If the acceptor makes payment with respect to the draft, the acceptor is entitled to recover from any war-rantor for breach of warranty the amounts stated in this Subsection.
(c) If a drawee asserts a claim for breach of warranty under Subsection (a) based on an unauthorized indorsement of the draft or an alteration of the draft, the warrantor may defend by proving that the indorsement is effective under R.S. 10:3-404 or 10:3-405 or the drawer is precluded under R.S. 10:3-406 or 10:4-406 from asserting against the draw-ee the unauthorized indorsement or alteration.
(d) If (i) a dishonored draft is presented for payment to the drawer or an indorser or (ii) any other instrument is presented for payment to a party obliged to pay the instrument, and (iii) payment is received, the following rules apply:
(1) The person obtaining payment and a prior transferor of the instrument warrant to the person making payment in good faith that the warrantor is, or was, at the time the warrantor transferred the instrument, a person entitled to enforce the instrument or authorized to obtain payment on behalf of a person entitled to enforce the instrument.
(2) The person making payment may recover from any warrantor for breach of warranty an amount equal to the amount paid plus expenses and loss of interest resulting from the breach.
(e) The warranties stated in Subsections (a) and (d) cannot be disclaimed with respect to checks. Unless notice of a claim for breach of warranty is given to the warrantor within 30 days after the claimant has reason to know of the breach and the identity of the warrantor, the liability of the warrantor under Subsection (b) or (d) is discharged to the extent of any loss caused by the delay in giving notice of the claim.
(f) A cause of action for breach of warranty under this Section accrues when the claimant has reason to know of the breach.

. We note that Louisiana Industries for the Disabled, Inc. v. Premier Bank, 2000-2946 (LA.App. 1 cir. 2/15/2002), 807 So.2d 1190, writ denied 2002-0810 (La.5/24/02), 816 So.2d 849 is not applicable here in that the case dealt with the review of the granting of a motion for summary judgment, not an exception of no right of action.

. La. R.S. 10:4-205 provides:
If a customer delivers an item to a depositary bank for collection:
(1) the depositary bank becomes a holder of the item at the time it receives the item for collection if the customer at the time of delivery was a holder of the item, whether or not the customer indorses the item, and, if the bank satisfies the other requirements of R.S. 10:3-302, it is a holder in due course; and
(2) the depositary bank warrants to collecting banks, the payor bank or other payor, and the drawer that the amount of the item was paid to the customer or deposited to the customer's account.

. La. R.S. 10:3-406 states:
(a) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.
(b) Under Subsection (a), if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.
(c) Under Subsection (a), the burden of proving failure to exercise ordinary care is on the person asserting the preclusion. Under Subsection (b), the burden of proving failure to exercise ordinary care is on the person precluded.